IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2007 FEB 23   PM 12: 55

BY _____ _lw_____
DEPUTY CLERK

ALLEN NASSIFF, on behalf of himself and all
others similarly situated,
    Plaintiff,

v.

LG PHILIPS LCD CO., LTD; LG PHILIPS LCD
AMERICA, INC.; SAMSUNG ELECTRONICS
CO., LTD.; SHARP CORPORATION; SHARP
ELECTRONICS CORPORATION; TOSHIBA
CORPORATION; TOSHIBA MATSUSHITA
DISPLAY TECHNOLOGY CO., LTD.;
HITACHI LTD., HITACHI DISPLAYS, LTD.;
HITACHI AMERICA LTD.; HITACHI
ELECTRONIC DEVICES (USA), INC.; SANYO
EPSON IMAGING DEVICES CORPORATION;
NEC CORPORATION; NEC LCD
TECHNOLOGIES, LTD.; NEC ELECTRONICS
AMERICA, INC.; IDT INTERNATIOAL, LTD.;
AU OPTRONICS; INTERNATIONAL DISPLAY
TECHNOLOGY CO., LTD.; INTERNATIONAL
DISPLAY TECHNOLOGY USA, INC.; AU
OPTRONICS CORPORATION AMERICA; CHI
MEI OPTOELECTRONICS; CHI MEI
OPTOELECTRONICS USA, INC.; CHUNGWA
PICTURE TUBES, LTD.; and HANNSTAR
DISPLAY CORPORATION,
    Defendants.

Civil Case No.:

2:07-cv-39

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

    Plaintiff, by his attorneys, brings this civil action for damages and injunctive relief on

behalf of himself and all others similarly situated against the above-named Defendants, and

demanding a trial by jury, complain and allege as follows:

## JURISDICTION AND VENUE

    1.    This Court has diversity subject-matter jurisdiction over this class action

pursuant to the Class Action Fairness Act of 2005, which amends 28 U.S.C. §1332 to add a

new subsection (d) conferring federal jurisdiction over class actions where, as here, "any

Kirkpatrick & Goldsborough, PLLC
Lakewood Commons
1233 Shelburne Road, Suite E-1
South Burlington, VT 05403
(802) 651-0960 Telephone
(802) 651-0964 Facsimile

member of a class of Plaintiff is a citizen of a State different from any defendant" and the aggregated amount in controversy exceeds five million dollars ($5,000,000), exclusive of interest and costs. *See* 28 U.S.C. '1332(d)(2) and (6). This Court also has jurisdiction under 28 U.S.C. §1332(d) because "one or more members of the class is a citizen of a state within the U.S. and one or more of the Defendants is a citizen or subject of a foreign state." The Court also has personal jurisdiction over the parties because Plaintiff submits to the jurisdiction of the Court and Defendants systematically and continually conduct business here and throughout the U.S., including marketing, advertising, and sales directed Vermont residents.

2.     This Court has venue under 15 U.S.C. §22 and 28 U.S.C. §1391 because Defendants reside, transact business, or are found within this District, and a substantial part o the events giving rise to the claims arose in this District.

### DEFINITIONS

3.     As used herein, the term "TFT-LCD Products" means Thin Film Transistor Liquid Crystal Display products, including such products as are used in televisions, computer (both desktop and notebook) monitors, mobile phones, personal digital assistants ("PDA's") and other devices.

4.     As used herein, the term "Class Period" means the time period extending from at least January 1, 1998 through at least December 31, 2005.

Kirkpatrick & Goldsborough, PLLC
Lakewood Commons
1233 Shelburne Road, Suite E-1
South Burlington, VT 05403
(802) 651-0960 Telephone
(802) 651-0964 Facsimile

## THE PARTIES

### The Plaintiff

5.    Plaintiff, Allen Nassiff, is a resident of Vermont who indirectly purchased TFT-LCD Panels from one or more of the Defendants during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

### The Defendants

6.    Defendant LG Philips LCD Co., Ltd. ("LG Philips") is a Korean entity with its principal place of business located at 20 Yoido-dong, Youngdungpo-gu, Seoul 150-721, Republic of Korea.  LG Philips is a joint venture created in 1999 by Philips Electronics NV and LG LCD.  LG Philips maintains offices in San Jose, California.  In its Form 6-K filed on December 11, 2006 with the United States Securities and Exchange Commission ("SEC"), LG Philips stated that it "is a leading manufacturer and supplier of thin-film transistor liquid crystal display (TFT-LCD) panels"; that it "manufacturers TFT-LCD panels in a wide range of sizes and specifications for use in TVs, monitors, notebook PCs, and various applications"; that it "currently operates seven fabrication facilities and four back-end assembly facilities in Korea, China and Poland."  (<http:www.lgphilips-lcd.com/homeContain/jsp/eng/inv/inv200 _j_e.jsp>).  During the Class Period, LG Philips manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including Vermont.

7.    Defendant LG Philips LCD America, Inc. is an entity organized under the laws of California with its principal place of business located at 150 East Brokaw Road, San Jose, CA 95112.  During the Class Period, LG Philips LCD America, Inc. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including Vermont.

8.    Defendant Samsung Electronics Co. Ltd. ("Samsung") is a business entity organized under the laws of South Korea, with its principal place of business at Samsung

Kirkpatrick & Goldsborough, PLLC
Lakewood Commons
1233 Shelburne Road, Suite E-1
South Burlington, VT 05403
(802) 651-0960 Telephone
(802) 651-0964 Facsimile

3

Main Building 250-2 ga. Taepyung-ro Chung-gu, Seoul, Korea. During the During the Class Period, Samsung manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including Vermont.

9.      Defendant Sharp Corporation is a business entity organized under the laws of Japan, with its principal place of business at 22-22 Nagaike-cho, Abeno-ku, Osaka 545-8522, Japan. During the Class Period, Sharp Corporation manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including Vermont.

10.      Defendant Sharp Electronics Corporation is a wholly owned and controlled subsidiary of Sharp Corporation, with its principal place of business at Sharp Plaza, Mahwah, New Jersey, 07430. During the Class Period, Sharp Electronics Corporation manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including Vermont. Sharp Corporation and Sharp Electronics Corporation are referred to collectively herein as "Sharp".

11.      Defendant Toshiba Corporation is a business entity organized under the laws of Japan, with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan. During the Class Period, Toshiba Corporation manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including Vermont.

12.      Defendant Toshiba Matsushita Display Technology Co., Ltd. is a business entity organized under the laws of Japan, with its principal place of business located at Rivage Shinagawa, 1-8, Konan 4-chome, Minato-ku, Tokyo 108-0075, Japan. Defendant Toshiba Corporation states on its website the following regarding Toshiba Matsushita Technology Co., Ltd.: "[a]dvanced capabilities in LCD and organic LED displays drive product development and production and enhanced sales operations with a truly worldwide reach. The company is the undisputed leader in low temperature polysilicon TFT technology, the preferred display for

Kirkpatrick & Goldsborough, PLLC
Lakewood Commons
1233 Shelburne Road, Suite E-1
South Burlington, VT 05403
(802) 651-0960 Telephone
(802) 651-0964 Facsimile

4

mobile devices and the underpinning technology for organic LED, the next generation display-or-choice for a range of products, including thin profile televisions. These leading-edge capabilities support us in providing high value added displays that are light and thin, consume little power and offer excellent image quality." (<http://www.toshiba.co.jp/worldwide/about/company/tmd.htm>). During the Class Period, Toshiba Matsushita Display Technology Co., Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including Vermont. Toshiba Corporation and Toshiba Matsushita Display Technology Co., Ltd. are referred to collectively herein as "Toshiba"

13.     Defendant Hitachi Ltd. is a business entity organized under the laws of Japan, with its principal place of business at 6-1 Marunouchi Center Building 13F Chiyoda-ku, Tokyo, 100-8220, Japan. During the Class Period, Hitachi Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including Vermont.

14.     Defendant Hitachi Displays, Ltd. is a business entity organized under the laws of Japan, with its principal place of business located at AKS Bldg. 5F, 6-2 Kanda Neribei-cho 3, Chiyoda-ku, Tokyo, 101-0022, Japan. On its website, Hitachi Displays, Ltd. states that "[w]e provide the world's best products, quality and service to meet the needs of the digital age. These include Hitachi's proprietary Advanced-Super IPS LCDs offering clear pictures from any angle; large-sized LCD modules for TVs using our original moving picture technology; small-sized LCD modules for information terminal devices such as cellular phones and digital cameras with low power consumption and high resolution picture realized by LTPS (low-temperature poly-silicon) technology; and the middle-sized colorful LCD modules for amusement devices. We also produce components such as LCD drivers, color filters and back-lights." (<http://www.hitachi-displays.com/en/company/work/index.html>).

Kirkpatrick & Goldsborough, PLLC
Lakewood Commons
1233 Shelburne Road, Suite E-1
South Burlington, VT 05403
(802) 651-0960 Telephone
(802) 651-0964 Facsimile

5

During the Class Period, Hitachi Displays, Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including Vermont.

15.     Defendant Hitachi America Ltd. is a wholly owned and controlled subsidiary of defendant Hitachi Ltd.  Hitachi America Ltd. is a business entity organized under the laws of New York, with its principal place of business at 50 Prospect Avenue, Tarrytown, New York, 10591.  During the Class Period, Hitachi America Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including Vermont.

16.     Defendant Hitachi Electronic Devices (USA), Inc. is a wholly owned and controlled subsidiary of Defendant Hitachi Ltd., and is a business entity with its principal place of business located at 575 Mauldin Road, Greenville, SC, 29607.  During the Class Period, Hitachi Electronic Devices (USA), Inc. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including Vermont.  Defendants Hitachi Ltd., Hitachi Displays, Ltd., Hitachi America Ltd. and Hitachi Electronic Devices (USA), Inc. are referred collectively herein as "Hitachi."

17.     Defendant Sanyo Epson Imaging Devices Corporation ("Sanyo Epson") is a "joint venture of Seiko Epson Corporation and Sanyo Electric Co., Ltd., started operations on October 1, 2004.  It combines the liquid crystal display operations of Epson, Sanyo Electric, and Sanyo Group companies Tottori Sanyo Electric Co., Ltd. and Sanyo LCD Engineering Co., Ltd. and mobilizes each company's special fields of miniaturization, high resolution, high definition, and volume production technology." (<http://www.sanyo-epson.com/e/company/outline/index.html>).  Defendant Sanyo Epson's principal place of business is located at World Trade Center Building 15F, 2-4-1 Hamamatsu-cho, Minato-ku, Tokyo, Japan.  During the Class Period, Sanyo Epson manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including Vermont.

Kirkpatrick & Goldsborough, PLLC
Lakewood Commons
1233 Shelburne Road, Suite E-1
South Burlington, VT 05403
(802) 651-0960 Telephone
(802) 651-0964 Facsimile

6

18.     Defendant NEC Corporation is a business entity organized under the laws of Japan, with its principal place of business located at 7-1, Shiba 5-chome, Minato-ku, Tokyo 108-8001, Japan.  During the Class Period, NEC Corporation manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including Vermont.

19.     Defendant NEC LCD Technologies, Ltd. is wholly owned and controlled subsidiary of Defendant NEC Corporation, and is an entity organized under the laws of Japan, with its principal place of business located at 1753 Shimonumabe, Nakahara-Ku, Kawasaki, Kanagawa 211-8666, Japan. During the Class Period, NEC LCD Technologies, Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States including Vermont.

20.     Defendant NEC Electronics America, Inc. ("NEC") is a wholly owned and controlled subsidiary of NEC Electronics Corporation, with its principal place of business at 2880 Scott Boulevard, Santa Clara, California and its manufacturing plant in Roseville, California.  During the Class Period, NEC Electronics America, Inc. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

21.     Defendant IDT International Ltd. is an entity organized under the laws of Bermuda, with its principal place of business located at Block C, 9th Floor, Kaiser Estate Phase 1, 41 Man Yue Street, Hunghom, Kowloon, Hong Kong.  During the Class Period, IDT International Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including Vermont.

22.     Defendant International Display Technology Co., Ltd. is an entity organized under the laws of Japan, with its principal place of business located at Nansei Yaesu Bldg. 3F, 2-2-10 Yaesu, Chuo-Ku, Tokyo 104-0028, Japan.  Defendant International Display Technology Co., Ltd. is a subsidiary of Defendant Chi Mei Optoelectronics Corporation.

Kirkpatrick & Goldsborough, PLLC
Lakewood Commons
1233 Shelburne Road, Suite E-1
South Burlington, VT 05403
(802) 651-0960 Telephone
(802) 651-0964 Facsimile

7

During the Class Period, International Display Technology Co., Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including Vermont.

23.     Defendant International Display Technology USA Inc. is a corporation with its principal place of business located at 101 Metro Drive, Suite 510, San Jose, California. Defendant International Display Technology USA Inc. is a subsidiary of Defendant Chi Mei Optoelectronics Corporation.  During the Class Period, International Display Technology USA, Inc. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including Vermont.

24.     Defendant AU Optronics is Taiwan's largest manufacturer of TFT-LCD Products and has its corporate headquarters at No. 1, Li-Hsin Rd. 2, Hsinchu Science Park, Hsinchu 30078, Taiwan.  During the Class Period, AU Optronics manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including Vermont.

25.     Defendant AU Optronics Corporation America ("AUOCA") is a wholly owned and controlled subsidiary of defendant AU Optronics and has its corporate headquarters at 9720 Cypresswood Drive, Suite 241, Houston, Texas.  AUOCA has a facility located in San Diego, California.  During the Class Period, AUOCA manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including Vermont.

26.     Defendant Chi Mei Optoelectronics Corporation ("Chi Mei") is a leading manufacturer of TFT-LCD Products and has its global headquarters at No. 3, Sec. 1, Huanshi Road, Southern Taiwan Science Park, Sinshih Township, Tainan County, 74147 Taiwan. . During the Class Period, Chi Mei manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including Vermont.

27.     Defendant Chi Mei Optoelectronics USA, Inc. is a wholly owned and controlled subsidiary of Chi Mei and has its corporate headquarters at 101 Metro Drive, Suite

Kirkpatrick & Goldsborough, PLLC
Lakewood Commons
1233 Shelburne Road, Suite E-1
South Burlington, VT 05403
(802) 651-0960 Telephone
(802) 651-0964 Facsimile

8

510, San Jose, California. During the Class Period, Chi Mei Optoelectronics USA, Inc. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including Vermont.

28.     Defendant Chunghwa Picture Tubes, Ltd. ("Chunghwa") is a leading manufacturer of TFT-LCD Products and has its global headquarters at 1127 Hopin Road, Padeh City, Taoyuan, Taiwan. During the Class Period, Chunghwa Picture Tubes, Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including Vermont.

29.     Defendant HannStar Display Corporation ("HannStar") is a leading manufacturer of TFT-LCD Products and has its headquarters at No. 480, Reuiguang Road, 12th Floor, Neihu Chiu, Taipei 114, Taiwan. . During the Class Period, HannStar Display Corporation manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including Vermont.

**Co-Conspirators**

30.     Certain other persons, firms, corporations and entities have participated as co-conspirators with Defendants in the violations and conspiracies alleged in this complaint. In order to engage in the offenses charged and violations alleged herein, these co-conspirators have performed acts and made statements in furtherance of the antitrust violations and conspiracies alleged.

31.     At all relevant times, each Defendant was an agent of each of the remaining defendants, and in doing the acts alleged herein, was acting within the course and scope of such agency. Each Defendant ratified and/or authorized the wrongful acts of each of the Defendants. Defendants are individually sued as participants and as aiders and abettors in the improper acts, plans, schemes, and transactions that are the subject of this complaint.

Kirkpatrick & Goldsborough, PLLC
Lakewood Commons
1233 Shelburne Road, Suite E-1
South Burlington, VT 05403
(802) 651-0960 Telephone
(802) 651-0964 Facsimile

Defendants, and each of them, have participated as members of the conspiracy or acted with or in furtherance of it, or aided or assisted in carrying out its purposes alleged in this complaint, and have performed acts and made statements in furtherance of the violations and conspiracy.

    32.    The acts charged in this complaint have been done by Defendants or were ordered or done by Defendants' officers, agents, employees, or representatives, while actively engaged in the management of defendants' affairs.

## FACTUAL ALLEGATIONS

    33.    Defendants and their co-conspirators have engaged in a contract, combination, trust or conspiracy, the effect of which was to raise the prices at which they sold TFT-LCD Products to artificially inflated levels from at least January 1, 1998 through at least December 31, 2005.

    34.    Very recently, antitrust enforcement authorities in multiple countries have begun investigating this unlawful cartel. On December 11, 2006, Defendant LG Philips, in its form 6-K filed with the SEC, stated the following:

> Last Friday, as part of an investigation of possible anticompetitive conduct in the LCD industry, officials from the Korean Fair Trade Commission (KFTC) visited the offices of LG Philips LCD in Seoul Korea. In addition, the Japanese Fair Trade Commission (JFTC) issued a notice to our offices, in Tokyo, Japan and then the United States Department of Justice (DOJ) issued a subpoena to our offices in San Jose, California.

(<http://www.lgphilips-lcd.com/homeContain/jsp/eng/inv/inv200_j_e.jsp>).

    35.    On December 11. 2006, the Reuters news agency reported the following:

> Samsung Electronics Co., Ltd. (005930.KS) is being investigated by fair trade watchdogs in South Korea, Japan and the United States, the second Korean flat screen maker named in a probe into possible price-fixing, a news agency report said on Tuesday.

Kirkpatrick & Goldsborough, PLLC
Lakewood Commons
1233 Shelburne Road, Suite E-1
South Burlington, VT 05403
(802) 651-0960 Telephone
(802) 651-0964 Facsimile

The report, from South Korea's Yonhap news agency, follows a disclosure by LG Philips LCD Co., Ltd (034220.KS) on Monday that it was the target of an investigation by the Korean Fair Trade Commission (KFTC), the Japanese Fair Trade Commission (JFTC) and had received a subpoena from the U.S. Department of Justice…

Yonhap citied unnamed regulatory and industry sources in reporting local antitrust authorities were also looking into possible collusion by Samsung and LG Philips to fix the prices of LCD products and control their supply…

Late on Monday, a KFTC spokesman said the probe was being conducted by the Cartel Investigation Group. (<http://business.scotsman.com/latest.cfm?id=1843512006>).

36.     On December 12 2006, other companies, including AU Optronics, Sharp, and Sanyo Epson, indicated they were under investigation.

37.     According to one report, " '[t]he subject of the probe is price fixing,' Akinori Yamada, a director of management and planning at Japan's Fair Trade Commission, said in Tokyo today.  He said LG Philips and Samsung were being questioned, although he declined to name or give the number of other companies being investigated.  In Washington, U. S. Justice Department spokeswoman Gina Talamona said the agency 'is investigating the possibility of anticompetitive practices' and is cooperating with foreign authorities." (<http://www.bloomberg.com/apps/news?pid=20601080&sid=aSF7WY69eUPg&refer=asia>. Another report indicated that "Min Chun Hong, an analyst at Goodmorning Shihan Securities, said that if the companies [Samsung and LG Philips] were convicted, penalties could amount to about 200 billion won, or $216 million, each."  (<http://www.iht.com/articles/2006/12/12/business/flat.php>).

38.     Michael Min, an analyst at Korea Investment and Securities, has been quoted as saying that the investigation may be focused on a period over the last several years when manufacturers of TFT-LCD Products were charging comparable prices.

Kirkpatrick & Goldsborough, PLLC
Lakewood Commons
1233 Shelburne Road, Suite E-1
South Burlington, VT 05403
(802) 651-0960 Telephone
(802) 651-0964 Facsimile

(<http://www.washingtonpost.com/wp-dyn/content/article/2006/12/12/AR200612120026 0.html>).

39.     There are also other indications that Defendants have engaged in collusive activity.  A "Crystal Cycle" is an industry term that refers to shortages in the supply-and-demand cycle for LCD displays.  A recent article in *Infoworld* (available at <http://www. infoworld.com/article/06/06/13/79145_25OPreality_1.html>) cited Chris Connery, an industry analyst at DisplaySearch, as follows: "[a]ccording to Connery, the talk in the industry is that the manufacturers are looking to create an artificial Crystal Cycle.  At a recent conference in Taiwan, a leading producer of LCD glass stated publicly that the industry should collectively look at a cutting back on production from 100 percent to at least 85 percent.  Otherwise, if supply outpaces demand, manufacturers will be forced to cut prices. … Will the mother-glass manufacturers actually create this artificial shortage?  'The chatter is growing louder each day,' Connery says."  A subsequent *Infoworld* article (<http://www.infoworld.com/article/ 06/06/12/79223_HNphilipscutslcd_1.html>) noted that the unnamed Taiwanese executive came from AU Optronics.

40.     Similarly, Samsung's presentation described above noted that "it was possible to secure a reasonable amount of profit while following the industry leaders" during the Class Period.

41.     Defendants, through their officers, directors and employees, effectuated the aforesaid contract, combination, trust or conspiracy between themselves and their co-conspirators by, among other things:

Kirkpatrick & Goldsborough, PLLC
Lakewood Commons
1233 Shelburne Road, Suite E-1
South Burlington, VT 05403
(802) 651-0960 Telephone
(802) 651-0964 Facsimile

    a.        participating in meetings and conversations, including through various trade associations and committees, to discuss the prices of TFT-LCD Products in the United States, including Vermont;

b.     agreeing, during those meetings and conversations, to charge prices at specified levels and otherwise to increase and maintain prices of TFT-LCD Products sold in the United States, including Vermont;

c.     issuing price announcements and quotations in accordance with the agreements reached; and

d.     selling TFT-LCD Products to various customers in the United States, including Vermont at non-competitive prices.

## FRAUDULENT, ACTIVE, AND SELF-CONCEALMENT

42.     Throughout and beyond the conspiracy, Defendants and their co-conspirators affirmatively and actively concealed their unlawful conduct from Plaintiff. Defendants and their co-conspirators conducted their conspiracy in secret and kept it mostly within the confines of their higher-level executives. Defendants and their co-conspirators publicly provided pretextural and false justifications regarding their price increases. Defendants and their co-conspirators conducted their conspiracy in secret, concealed the true nature of their unlawful conduct and acts in furtherance thereof, and actively concealed their activities through various other means and methods to avoid detection. Plaintiff did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants and their co-conspirators were violating the antitrust laws as alleged herein until shortly before this class action litigation was commenced.

43.     As a result of the active concealment of the conspiracy by Defendants and their co-conspirators, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## CLASS-ACTION ALLEGATIONS

44.     Plaintiff brings this class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure on behalf of himself and the following class members:

Kirkpatrick & Goldsborough, PLLC
Lakewood Commons
1233 Shelburne Road, Suite E-1
South Burlington, VT 05403
(802) 651-0960 Telephone
(802) 651-0964 Facsimile

### Injunctive-Relief Class

All persons and business entities in all 50 states that indirectly purchased Thin Film Transistor Liquid Crystal Display and/or products containing Thin Film Transistor Liquid Crystal Display manufactured, sold, or distributed by Defendants, for end use and not for resale, from at least January 1, 1998 through at least December 31, 2005.

Excluded from the Injunctive-Relief Class are Defendants, entities in which Defendants have a controlling interest, Defendants' employees, officers, or directors, Defendants' legal representatives, successors, or assigns, judicial officers who may hear the case or related persons, and jurors or related persons.

Plaintiff also brings this class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and the following class members:

### Money-Damages Class

All people and business entities in Vermont that indirectly purchased Thin Film Transistor Liquid Crystal Display and/or products containing Thin Film Transistor Liquid Crystal Display manufactured, sold, or distributed by Defendants, for end use and not for resale, from at least January 1, 1998 through at least December 31, 2005.

Excluded from the Money-Damages Class are Defendants, entities in which Defendants have a controlling interest, Defendants' employees, officers, or directors, Defendants' legal representatives, successors, or assigns, judicial officers who may hear the case or related persons, and jurors or related persons.

45.     Plaintiff has met the requirements of Rules 23(a), 23(b)(1), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure.

46.     Plaintiff does not know the exact size of the classes, since this information is in Defendants' exclusive control.  But based on the nature of the trade and commerce involved, Plaintiff believes that each class numbers at least in the hundreds and that the members of each class are geographically dispersed throughout the State of Vermont (Money-Damages Class), or alternatively, throughout the U.S. including in Vermont (Injunctive-Relief Class).

Kirkpatrick & Goldsborough, PLLC
Lakewood Commons
1233 Shelburne Road, Suite E-1
South Burlington, VT 05403
(802) 651-0960 Telephone
(802) 651-0964 Facsimile

Therefore, joinder of the members of each class would be impracticable, and class treatment is the superior method for fairly and efficiently adjudicating this controversy.

47.     Plaintiff's claims within the respective classes are typical of other class members' claims because all class members were injured through the uniform misconduct described and paid supra-competitive prices for products containing TFT-LCD without being informed that they were paying illegal and improper prices. Accordingly, by proving his own claims, Plaintiff will presumptively prove the respective class members' claims.

48.     The following common questions of law or fact, among others, exist as to the members of the Class:

a.     Whether Defendants conspired to fix, raise, maintain, or stabilize the prices of TFT-LCD Products marketed, distributed, and sold in the U.S. and/or Vermont;

b.     Whether Defendants conspired to manipulate and allocate the market for TFT-LCD Products marketed, distributed, and sold in the U.S. and/or Vermont;

c.     The existence and duration of Defendants' horizontal agreements to fix, raise, maintain, or stabilize the prices of TFT-LCD Products marketed, distributed, and sold in the U.S. and/or Vermont;

d.     The existence and duration of Defendants' horizontal agreements to manipulate and allocate the market for TFT-LCD Products marketed, distributed, and sold in the U.S. and/or Vermont;

e.     Whether each Defendant was a member of, or participated in, the arrangement, contract, or agreement to fix, raise, maintain, or stabilize the prices of TFT-LCD Products marketed, distributed, and sold in the U.S. and/or Vermont;

f.     Whether each Defendant was a member of, or participated in, the arrangement, contract, or agreement to allocate the market for TFT-LCD Products marketed, distributed, and sold in the U.S. and/or Vermont;

g.     Whether Defendants' conspiracy was implemented;

h.     Whether Defendants took steps to conceal their conspiracy from Plaintiff and the class members;

Kirkpatrick & Goldsborough, PLLC
Lakewood Commons
1233 Shelburne Road, Suite E-1
South Burlington, VT 05403
(802) 651-0960 Telephone
(802) 651-0964 Facsimile

i.  Whether Defendants' conduct caused injury in fact to the business or property of Plaintiff and the class members, and if so, the appropriate class-wide measure of damages;

j.  Whether the agents, officers or employees of Defendants and their co-conspirators participated in telephone calls, meetings, and other communications in furtherance of their conspiracy; and

k.  Whether the purpose and effect of the acts and omissions alleged was to fix, raise, maintain, or stabilize the prices of TFT-LCD Products marketed, distributed, and sold in the U.S. and/or Vermont, and to manipulate and allocate the market for TFT-LCD Products marketed, distributed, and sold in the U.S. and/or Vermont.

49.  Plaintiff can and will fairly and adequately represent and protect the respective class members' interests and have no interests that conflict with or are antagonistic to the class members' interests.  Plaintiff's attorneys are experienced and competent in complex class action and consumer-antitrust litigation.

50.  Class certification of the respective, alternative classes is appropriate under Rule 23(b)(3) of the Federal Rules of Civil Procedure because a class action is the superior procedural vehicle for the fair and efficient adjudication of the claims asserted given that:

a.  Common questions of law and fact overwhelmingly predominate over any individual questions that may arise among or within the respective, alternative classes and, consequently, enormous economies to the court and parties exist in litigating the common issues on a class-wide basis or, alternatively, bases, instead of on a repetitive individual basis or, alternatively, bases;

b.  Each individual class member's damage claim is too small to make individual litigation an economically viable alternative, and few class members have any interest in individually controlling the prosecution of separate actions;

c.  Class treatment is required for optimal deterrence and compensation and for limiting the court-awarded reasonable legal expenses incurred by class members; and

d.  Despite the relatively small size of each individual class member's claim, the aggregate volume of their claims, whether considered in a

Kirkpatrick & Goldsborough, PLLC
Lakewood Commons
1233 Shelburne Road, Suite E-1
South Burlington, VT 05403
(802) 651-0960 Telephone
(802) 651-0964 Facsimile

16

national class or, alternatively, in a Vermont class, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost effective basis, especially when compared with repetitive individual litigation, and no unusual difficulties are likely to be encountered in this class action's management in that all legal and factual questions are common to the class or, alternatively, classes.

51.     Class certification is appropriate pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure because prosecution of separate actions would create a risk of adjudication with respect to individual class members, whether within or among the respective classes, which may, as a practical matter, dispose of other class members' interests who aren't parties to the adjudication or which may substantially impair or impede their ability to protect their interests. Separate actions prosecuted by individual class members would also create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants.

52.     Class certification, whether as a national class or Vermont class, is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendants have acted on grounds generally applicable to the respective class' members.

53.     Plaintiff's claims within and among the respective classes are typical of the associated class members' claims because Defendants injured Plaintiff and the respective class members in the same manner (*i.e.,* Plaintiff and the respective class members were forced to pay supra-competitive prices for products containing TFT-LCD Product).

## **TRADE AND COMMERCE**

54.     Throughout the Class Period, Defendants and their co-conspirators engaged in the business of marketing and selling TFT-LCD Products throughout the United States.

55.     As Defendant LG Philips states on its website, "the thin-film transistor liquid crystal display ("TFT-LCD") is a cutting-edge display, which screens picture information by

Kirkpatrick & Goldsborough, PLLC
Lakewood Commons
1233 Shelburne Road, Suite E-1
South Burlington, VT 05403
(802) 651-0960 Telephone
(802) 651-0964 Facsimile

adjusting the amount of light permitted." (<http://www.lgphilips-lcd.com/homeContain/jsp/eng/tech/tech210_j_e.jsp>). LG Philips further states that "TFT is a circuit formed with semiconductor films on a this glass substrate to control liquid crystals…. This circuit plays a vital role in controlling each pixel, the basic unit of a picture image. The color filter displays a color image by coating the pixel (red, green and blue) on a glass substrate." *Id.*

56.    At the portion of its website entitled "How TFT-LCD Works", Defendant LG Philips explains:

> A pixel, the smallest unit to indicate a picture image, is formed by three sub-pixels consisting of red, green and blue. The number of pixels arranged in a display determines the resolution of the TFT-LCD. TFT is composed of a data line (image signal transfer) and gate line (TFT on/off signal transfer). TFT existing in each sub-pixel controls the voltage difference between the TFT glass electrode and the color filter glass electrode in order to adjust the molecular array of liquid crystals. Such a change in the molecule direction of liquid crystals alters the amount of light penetrating the liquid crystal layer. Consequently, the TFT-LCD display shows picture image information.
> (http://www.lgphilips-lcd.com/homeContain/jsp/eng/tech/tech210_01_j_e.jsp>)

57.    The company describes some of the applications for TFT-LCD technology as follows:

> TFT-LCD technology has created a wide range of computer and consumer products that would not have been possible with cathoderay tubes (CRT). The flat and thin attributes of LCDs make them ideal for mobile or portable applications. In addition, LCDs can operate at low voltage levels and dissipate with low heat exposure. Initially, LCDs were incorporated into notebook computers, similar in size and resolution to 12-14 inch CRT monitors. Through innovation, TFT-LCD engineers were able to develop displays providing much higher resolution than CRTs, in addition to producing them in larger sizes.
>
> Today, TFT-LCDs are challenging CRT-based desktop computer monitors. As a result, a wider range of mobile computing applications are now available. Engineers have found ways to reduce weight, thickness, and the frame width of notebook computer displays. New TFT process technologies make it possible to deliver more pixels per inch and allow even portable computers to display more information than the latest CRT

Kirkpatrick & Goldsborough, PLLC
Lakewood Commons
1233 Shelburne Road, Suite E-1
South Burlington, VT 05403
(802) 651-0960 Telephone
(802) 651-0964 Facsimile

18

monitor.  Such technology became available just as DVDs became popular, so consumers can now get DVD players in very thin and light packages.  Currently, a similar transformation is occurring with next-generation cell phones and wireless networks.

(http://www.lgphilips-lcd.com/homeContain/jsp/eng/tech/tech210_02_j_e.jsp>).

58.     The market for TFT-LCD Products is huge.  An October 10, 2006 article stated that "[m]anufacturers are expected to pump out 48.4 million LCDs for TVs this year alone, up 70 percent over 2005, with flat-panel sales – most of those using LCD technology – are expected to reach $US 88 billion this year and $US 100 billion in 2007, according to market research company Display Search."  (<http://www.theagecom.au/news/home-theatre/they-are-building-it-but–will-lcd-sales-come/2006/10/09/1160246068541.html#>).

59.     The market for the manufacture and sale of TFT-LCD Products is also conductive to the type of collusive activity alleged here.  That market is oligopolistic in nature.  According to date from iSuppli, in 2005, LG Philips had 21.4% of the large TFT-LCD panel global market share, Samsung had 20.9%, AU Optronics had 14.5%, Chi Mei had 11.8%, and Chunghwa had 7.3%, while the remaining suppliers controlled 24.1%.  (<http://www.eetimes.com/showArticle.jhtml?articleID=177101936>).  Samsung took over the leading position in the industry in 2006.  (<http://biz.yahoo.com/rb/061211/lgphilips_investigation.html?.v=2>).

60.     Some of these companies are known antitrust violators.  Samsung, for example, was fined $300 million by the United States Department of Justice ("DOJ") in October of 2005 for participating in a conspiracy to fix prices for Dynamic Random Access Memory.  It is also under investigation by the DOJ (along with some of the other Defendants) for fixing prices of Static Random Access Memory.

Kirkpatrick & Goldsborough, PLLC
Lakewood Commons
1233 Shelburne Road, Suite E-1
South Burlington, VT 05403
(802) 651-0960 Telephone
(802) 651-0964 Facsimile

61.     The industry is also marked by a web of cross-licensing agreements that facilitate collusion.  AU Optronics, for example, entered into licensing arrangements with Sharp in 2005 and Samsung in 2006.  Chi Mei has licensing arrangements with Sharp, AU Optronics, Chunghwa, HannStar and Hitachi.

62.     The market for the manufacture and sale of TFT-LCD Products is subject to high manufacturing and technological barriers to entry, some of which are described in Samsung's own November 3, 2005 "Market Perspective & Strategy" presentation available at its website.  (<http:www.samsung.com/AboutSAMSUNG/ELECTRONICSGLOBAL/ InvestorRelations/IREventsPresentations/AnalystDay/index.htm>).  Efficient fabrication plants are large and costly.  TFT-LCD Products are also subject to technological advances, so that firms within the industry must undertake significant research and development expenses.

63.     The TFT-LCD Products industry has also been subject to significant consolidation during the Class Period, as reflected in AU Optronics' recent acquisition of Quanta Display, the creation in 2001 of AU Optronics itself through the merger of Acer Display and Unipac Optoelectronics, or Fujitsu Limited's transfer of its LCD business to Sharp in 2005.

64.     Defendants sell their TFT-LCD Products through various channels including to manufacturers of electronic products and devices, and to resellers of TFT-LCD products. These electronic products and devices and TFT-LCD Products are then sold, directly or indirectly, to consumers and are not altered during the course of sale.

Kirkpatrick & Goldsborough, PLLC
Lakewood Commons
1233 Shelburne Road, Suite E-1
South Burlington, VT 05403
(802) 651-0960 Telephone
(802) 651-0964 Facsimile

## COUNT I
### (Applicable to the Injunctive-Relief Class)
### VIOLATION OF THE CLAYTON ACT

65.     Plaintiff repeats and re-alleges paragraphs 1 through 64.

66.     During the Class Period, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize the prices of TFT-LCD Products in the U.S., in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

67.     In formulating and carrying out their illegal agreement, understanding, and conspiracy, Defendants and their co-conspirators did the following things, among others:

a.     Fixed, raised, maintained, and stabilized the prices of TFT-LCD Products;

b.     Allocated TFT-LCD Products markets among themselves;

c.     Rigged bids for the award and performance of certain TFT-LCD Products contracts; and

d.     Allocated among themselves and collusively reduce the production of TFT-LCD Products.

68.     Defendants' combination and conspiracy had the following effects, among others:

a.     Price competition in the sale of TFT-LCD Products was restrained, suppressed, and/or eliminated in the U.S. including Vermont;

b.     Prices for TFT-LCD Products sold by Defendants and their co-conspirators were fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the U.S. including Vermont; and

c.     Those who purchased TFT-LCD Products directly or indirectly from Defendants and their co-conspirators were deprived of the benefits of free and open competition.

69.     Plaintiff has been injured and will continue to be injured in his business and property by paying more for TFT-LCD Products purchased indirectly from Defendants and their co-conspirators than he would have paid and will pay in the absence of Defendants'

Kirkpatrick & Goldsborough, PLLC
Lakewood Commons
1233 Shelburne Road, Suite E-1
South Burlington, VT 05403
(802) 651-0960 Telephone
(802) 651-0964 Facsimile

conspiracy, including paying more for personal computers and other TFT-LCD Products or products containing TFT-LCD Product components by the manufacturers of those products.

70.     As a proximate cause of Defendants' conspiracy, Plaintiff is entitled to an injunction against Defendants preventing and restraining Defendants' violations.

**COUNT II**
**(Applicable to the Money-Damages Class)**
**VIOLATION OF VERMONT LAW**

71.     Plaintiff repeats and re-alleges paragraphs 1 – 70.

72.     During the Class Period, Defendants engaged in an unfair method of competition in Vermont commerce and in unfair and deceptive acts or practices in Vermont commerce by conspiring to fix TFT-LCD Products' prices and to allocate TFT-LCD Products customers and markets. Defendants' conspiracy lessened full and free competition in TFT-LCD Products' importation and sales into Vermont and controlled their costs, which violated 9 Vt. Stat. Ann. §2451 *et seq.*

73.     Defendants' conspiracy caused them to (a) fix, raise, maintain, and stabilize TFT-LCD Products prices; (b) allocate TFT-LCD Products customers and markets; and (c) caused Plaintiff and the other Vermont class members to pay higher prices for TFT-LCD Products that they indirectly purchased from Defendants.

74.     In formulating and effectuating their conspiracy, Defendants and their co-conspirators:

a.     Met to discuss TFT-LCD Products customers and markets;

b.     Agreed to charge prices at certain levels and to increase or maintain prices for TFT-LCD Products sold in Vermont;

c.     Issued price announcements, quotations, and charged prices consistent with their illegal agreement; and

d.     Allocated TFT-LCD Products markets and customers consistent with their illegal agreement.

Kirkpatrick & Goldsborough, PLLC
Lakewood Commons
1233 Shelburne Road, Suite E-1
South Burlington, VT 05403
(802) 651-0960 Telephone
(802) 651-0964 Facsimile

22

75.     Defendants' conspiracy had the following effects:

      a.      TFT-LCD Products price competition was restrained, suppressed, and eliminated throughout the U.S., including in Vermont;

      b.      TFT-LCD Products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the U.S., including in Vermont;

      c.      Plaintiff and the other Vermont class members that indirectly purchased TFT-LCD Products were deprived of free and open market competition and were injured; and

      d.      Plaintiff and the other Vermont class members paid more than they otherwise would have for TFT-LCD Products that they purchased indirectly.

76.     Defendants' conspiracy has substantially affected commerce within Vermont and constituted an unfair method of conduct.

77.     During the Class Period, Vermonters indirectly purchased millions of dollars of Defendants' TFT-LCD Products in Vermont from Defendants.  By reason of Defendants' violations of the Vermont Consumer Fraud Act, Plaintiff and the Vermont class members paid significantly more for products containing Defendants' TFT-LCD Products than they would have paid absent Defendants' illegal combination and conspiracy, and, as a result, Plaintiff and the Vermont class members were injured in their businesses and property and have suffered damages in amounts presently undetermined.

## COUNT III
### (Applicable to the Money-Damages Class)
### UNJUST ENRICHMENT

78.     Plaintiff repeats and re-alleges paragraphs 1 through 77.

79.     As the result of Defendants' illegal agreement, contract, combination, and conspiracy, Plaintiff and the Vermont class members conferred a benefit upon Defendants, and Defendants received and retained this benefit under such circumstances that it would be

Kirkpatrick & Goldsborough, PLLC

Lakewood Commons

1233 Shelburne Road, Suite E-1

South Burlington, VT 05403

(802) 651-0960 Telephone

(802) 651-0964 Facsimile

inequitable and unconscionable to permit Defendants to retain this benefit without paying its

reasonable value to Plaintiff and the class members.

80. As a direct and proximate result of Defendants' unjust enrichment, Plaintiff

and Vermont class members suffered injury and seek an order directing Defendants to return

to them the amount each of them improperly paid to Defendants, plus interest.

## JURY DEMAND

81. Plaintiff demands trial by jury on all triable issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment in the respective class

members' favor and against Defendants, as follows:

A. That this Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure and certify either or both classes;

B. With respect to the Injunctive-Relief Class, that this Court rule that Defendants' conspiracy violated the Sherman Act and that injunctive relief under the Clayton Act is appropriate;

C. With respect to the Money-Damages Class, that this Court rule that Defendants' conspiracy violated Vermont law and that compensatory damages, including treble damages, or full consideration trebled, are appropriate;

D. With respect to the Money-Damages Class, that this Court determine that Defendants were unjustly enriched;

E. That this Court permanently enjoin Defendants from conspiring to fix TFT-LCD Product prices and allocating TFT-LCD Product markets or other injunctive relief as this Court deems appropriate;

F. That this Court award Plaintiff post-judgment interest, his costs, and reasonable attorneys' fees; and

G. That this Court order any other relief as it deems just and proper.

Kirkpatrick & Goldsborough, PLLC

Lakewood Commons

1233 Shelburne Road, Suite E-1

South Burlington, VT 05403

(802) 651-0960 Telephone

(802) 651-0964 Facsimile

Dated at South Burlington, Vermont, this $22$ day of February, 2007.

KIRKPATRICK & GOLDSBOROUGH, PLLC

By: _____

Mary G. Kirkpatrick, Esquire
1233 Shelburne Road, Suite E-1
South Burlington, VT 05403
Telephone:    (802) 651-0960
Facsimile:    (802) 651-0964
E-mail:    mkirk@vtlawfirm.com

Daniel R. Karon, Esquire
GOLDMAN SCARLATO & KARON, P.C.
55 Public Square, Suite 1500
Cleveland, OH 44113
Telephone:    (216) 622-1851
Facsimile:    (216) 622-1852
E-mail:    karon@gsk-law.com

Krishna B. Narine, Esquire
LAW OFFICES OF KRISHNA B. NARINE
7893 Montgomery Avenue, Suite 300
Elkins Park, PA 19027
Telephone:    (215) 782-3240
Facsimile:    (215) 782-3241
E-mail:    knarine@kbnlaw.com

Isaac L. Diel, Esquire
SHARP McQUEEN, P.A.
Financial Plaza
6900 College Boulevard, Suite 285
Overland Park, KS 66211
Telephone:    (913) 661-9931
Facsimile:    (913) 661-9935
E-mail:    dslawkc@aol.com

Gordon Ball, Esquire
BALL & SCOTT
Suite 750, Bank of America Center
550 Main Street
Knoxville, TN 37902
Telephone:    (865) 525-7028
Facsimile:    (865) 525-4679
E-mail:    gball@ballandscott.com

Kirkpatrick & Goldsborough, PLLC
Lakewood Commons
1233 Shelburne Road, Suite E-1
South Burlington, VT 05403
(802) 651-0960 Telephone
(802) 651-0964 Facsimile

26148-003